**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KAREEM S. PERRY,

                                        Plaintiff,

                    - v -                                       Civ. No. 9:06-CV-1361
                                                                        (NAM/RFT)
L. TICHLER,[1] *Physician, Upstate Correctional Facility*,

                                        Defendant.

APPEARANCES:                                    OF COUNSEL:

KAREEM S. PERRY
Plaintiff, *Pro se*
Southport Correctional Facility
P.O. Box 2000
Pine City, N.Y. 14871

HON. ANDREW M. CUOMO                            STEVEN H. SCHWARTZ
Attorney General of the State of New York       Assistant Attorney General
Attorney for the Defendant Tichenor
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    <u>**REPORT-RECOMMENDATION and ORDER**</u>

        *Pro se* Plaintiff Kareem S. Perry brought this civil rights action, pursuant to 42 U.S.C. §

1983, alleging that Defendant Louise Tichenor displayed deliberate indifference to his serious

medical needs when she "roughly handle[d] plaintiff's injured knee" and ordered that his use of

crutches be discontinued.  Dkt. No. 1, Compl. at ¶¶ 5 & 6.  Defendant Tichenor filed a Motion for

Summary Judgment, Dkt. No. 18, which Plaintiff opposes, Dkt. No. 21.  Based on the discussion

---

[1] The correct spelling of the Defendant's name appears to be "Tichenor," not "Tichler."  Dkt. No. 18-2, Defs.'
Rule 7.1(a)(3) Statement at ¶ 1; Dkt. No. 18, Louise Tichenor Decl., dated Jan. 3, 2008.  Accordingly, we will refer to
Defendant using the correct spelling of her name.

below, it is recommended that Defendant's Motion be **granted** and this action be **dismissed.**

## I.  MATERIAL FACTS

On or around August 22, 2005, Plaintiff was involved in a violent incident at Rikers Island City Jail (hereinafter "Rikers Island").  Compl. at ¶ 1; Dkt. No. 20, Pl.'s Decl. in Opp'n to Def.'s Mot. for Summ. J. (hereinafter "Pl.'s Decl."), dated Apr. 27, 2008, at ¶ 4.  As a result of that incident, Plaintiff suffered a "badly bruised knee."  *Id.*  When pressure was applied to the knee, Plaintiff felt "severe pain."  Pl.'s Decl. at ¶ 4.  The doctors at Rikers Island scheduled Plaintiff for examinations and, because he was "unable to walk" without feeling pain in his knee, issued him crutches.  *Id.*

On September 26, 2005, Plaintiff arrived at Upstate Correctional Facility (hereinafter "Upstate") and informed the evening nurse of his knee injury.  Compl. at ¶ 2.  Plaintiff explained that the doctors at Rikers Island thought that Plaintiff might have a damaged nerve or badly bruised tissue around his knee.  *Id.*  X-rays were taken of Plaintiff's injured knee on September 27, 2005. *Id.* at ¶ 3; Pl.'s Decl. at ¶ 5.  Defendant Tichenor, a physician's assistant,[2] saw Plaintiff on or about September 28, 2005.[3]   Compl. at ¶ 4; Dkt. No. 18-3, Def.'s Rule 7.1 Statement of Material Facts, dated Jan. 1, 2008, at ¶¶ 2-4 (hereinafter "Def.'s 7.1 Statement").

While there is some dispute as to what occurred during the examination, both parties agree that Tichenor examined Plaintiff's leg in some manner.  *See* Compl. at ¶ 5; Pl.'s Decl. at ¶ 6; Def.'s 7.1 Statement at ¶¶ 5-7.  Plaintiff alleges that Tichenor "roughly handle[d] plaintiff's injured knee,"

---

[2] Plaintiff has identified Tichenor as a physician, *see* Compl., however, her actual professional title is "Registered Physician's Assistant," Tichenor Decl. at ¶ 1.

[3] Plaintiff alleges that he met with Defendant Tichenor on September 28, 2005, Compl. at ¶ 4, however, Defendant asserts their meeting occurred on September 27, 2005, Tichenor Decl. at ¶ 3.  For the purposes of deciding this Motion, it matters not whether the incident occurred on September 27 or September 28, 2005.

Compl. at ¶ 5, while Tichenor swears she conducted a normal and appropriate examination, Tichenor

Decl. at ¶¶ 2-6.  After the examination, Tichenor discontinued Plaintiff's use of crutches.  Compl.

at ¶ 6; Def.'s 7.1 Statement at ¶ 8.  Plaintiff alleges that without the aid of crutches, he was forced

to put pressure on his injured knee, and as a result, the knee swelled.  Pl.'s Decl. at ¶ 8.  On October

3, 2005, less than one week after the examination, Plaintiff was transferred from Upstate to Elmira

Correctional Facility (hereinafter "Elmira"), where crutches were re-issued.  Compl. at ¶ 7.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter

of law."  The moving party bears the burden to demonstrate through "pleadings, depositions,

answers to interrogatories, and admissions on file, together with [] affidavits, if any," that there is

no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary

judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure

56(e)] and has, in accordance with local court rules, served a concise statement of the material facts

as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted

unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154

(2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts

showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials"

of the facts submitted by the movant.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d

282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . .  interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B.  Eighth Amendment

Plaintiff states that Defendant Tichenor was deliberately indifferent to his serious medical

needs when she "roughly handle[d] his injured knee" and then took away his crutches. Compl. at ¶¶ 5-8. To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d 63, 66 (2d Cir. 1994)). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This

-5-

requires "something more than mere negligence . . . but something less than acts or omissions for

the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also*

*Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*).  Further, a showing of medical

malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves

culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious

disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting

*Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v.*

*Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

In the case at bar, Plaintiff makes two distinct claims: (1) Tichenor roughly handled his knee

during an examination; and (2) Tichenor improperly took away Plaintiff's crutches.  We turn first

to whether Plaintiff suffered from a serious medical condition under the Eighth Amendment.  *Smith*

*v. Carpenter*, 316 F.3d at 184.

Plaintiff alleges that he sustained a "badly bruised knee" due to his involvement in a violent

incident at the Rikers Island.  Compl. at ¶ 1.  Plaintiff's medical records indicate that on September

26, 2005, the day he arrived at Upstate, another nurse noted that Plaintiff's knee showed no signs

of swelling or bruising and that he had good range of motion. Tichenor Decl., Ex. A, Pl.'s

Ambulatory Health Rec. ("AHR"), entry dated Sept. 26, 2005. Tichenor states she examined

Plaintiff's knee on the next day, and her notes in Plaintiff's AHR from that day indicate she

observed no effusion and no tenderness in his knee.  *Id*., entry dated Sept. 27, 2005.  However,

Plaintiff has submitted copies of his AHR from October 2005, after his transfer to Elmira, which

indicate that his right knee appeared "mildly swollen," and appeared "to have muscle atrophy above

[the] patella." Dkt. No. 26, Pl.'s Supp. Resp. to Def.'s Mot., Ex. F, AHR, entry dated Oct. 5, 2005.

Other entries in Plaintiff's AHR from October 2005 indicated that Plaintiff might have had a tear in a collateral ligament in his right knee and probably sprained his knee. *Id*., AHR entry dated Oct. 7, 2005. Plaintiff asserts that Dr. Alves, a physician at Elmira, "informed plaintiff that the nerve was not damaged, just bruised tissue and that the knee would heal on its own." Pl.'s Supp. Resp. at ¶ 13. Finally, Plaintiff's AHR reflects that he was reissued crutches upon his transfer to Elmira. *Id.*, AHR entry dated Oct. 6, 2005.

Generally speaking, "knee injuries have been [held] insufficient to trigger Eighth Amendment protection and support a deliberate indifference claim." *Guarneri v. Bates*, 2008 WL 686809, at \*7 (N.D.N.Y. Mar. 10, 2008) (internal quotation marks and citations omitted). Plaintiff alleges that his knee was badly bruised, and his medical records indicate that he possibly had torn a collateral ligament and/or sprained his knee. Such knee injuries, while uncomfortable and painful, do not constitute serious medical conditions under the Eighth Amendment. *See, e.g., Williamson v. Goord*, 2006 WL 1977438, at \*9-16 (N.D.N.Y. July 11, 2006) (knee injuries such as a torn meniscus, arthritis, and ligament tears are not serious injuries under the Eighth Amendment).

However, Plaintiff alleges he was in "extreme pain" during the period Tichenor handled his knee. Tichenor avers that during the examination, she manipulated Plaintiff's knee by "pulling the knee out straight, placing one hand on the upper part of the knee and one hand on the lower part and pushing the knee to the right, to try to open up the joint." Tichenor Decl. at ¶ 5. Plaintiff does not allege that his knee was further injured by Tichenor's examination, nor does he allege that he was in extreme pain after the examination concluded. Thus, even assuming Plaintiff suffered extreme pain during the period Tichenor manipulated his knee, such a short period of pain is *de minimis* and does not constitute a serious medical condition under the Eighth Amendment.

It is undisputed that Plaintiff's use of crutches was discontinued on or about September 27, 2005 and that crutches were re-issued once Plaintiff was returned to Elmira on October 3, 2008. Thus, according to Plaintiff's own allegations, he was denied the use of crutches for less than one week. *Id.*  Where a "prisoner is receiving appropriate on-going treatment for his condition" and brings a claim for denial of adequate medical care for an "interruption in treatment," the Second Circuit has stated that the "serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter*, 316 F.3d at 186. Specifically, it is "the particular risk of harm faced by the prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.*

Here, Plaintiff alleges that as a consequence of not having crutches, his knee swelled and he was forced to "hop while shackled, going up and down stairs." Pl.'s Decl. at ¶ 8. Plaintiff does not allege any additional adverse effects or injuries stemming from the week he was without crutches. Furthermore, Plaintiff does not allege that he was in excessive pain because of the deprivation of the crutches.  Finally, Plaintiff does not suggest that the alleged denial of medical care is likely to cause any future illness or suffering.  In sum, there is no allegation or evidence on the record that the deprivation of crutches created or had the potential to create serious harm to Plaintiff.  Thus, Plaintiff did not have a serious medical need under the Eighth Amendment, and his Complaint should be **dismissed** on that basis. *See Helling v. McKinney*, 509 U.S. at 35; *Smith v. Carpenter*, 316 F.3d at 185-87; *see also Evans v. Bonner*, 196 F. Supp. 2d 252, 256 (E.D.N.Y. 2002) (holding that plaintiff's alleged injury, consisting of aches, pains, and joint problems, from untimely receipt of medication, was, as a matter of law, not sufficiently serious to rise to constitutional level, because

the allegations did not demonstrate condition of urgency or condition that would produce degeneration or extreme pain).

Furthermore, even if we were to accept that Plaintiff was suffering from a serious medical condition, the record shows that Tichenor took away Plaintiff's crutches based on her assessment that they were not medically indicated.  Tichenor Decl. at ¶ 7.  Although Plaintiff disagreed with Tichenor's diagnosis, "[w]hether an injured prisoner should be provided crutches is a medical judgment as to the appropriate course of treatment, and disagreement with that decision in not actionable under the Eighth Amendment."  *Wandell v. Koenigzmann*, 2000 WL 1036030, at *4 (S.D.N.Y. July 27, 2000).  Therefore, it is recommended that the Defendant's Motion for Summary Judgment be **granted** on that basis as well.

## III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendant's Motion for Summary Judgment (Dkt. No. 18) be **granted** and the Complaint (Dkt. No. 1) **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   March 10, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge